UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 6:09-CV-069-KKC

ROSA ELLIOTT                                                                                    PLAINTIFF

v.                                          **OPINION AND ORDER**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY                                       DEFENDANT

\* \* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on cross motions for summary judgment filed by Plaintiff Rosa Elliott ("Elliott") and Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner"). Rec. No. 9, 10, 13. In support of her motion, Elliott argues that (1) the ALJ's decision failed to address her application for Supplemental Security Income; (2) his RFC determination is not supported by substantial evidence; and (3) the hypothetical questions posed to a vocational expert did not adequately convey her limitations. The Commissioner has responded that the decision denying benefits is supported by substantial evidence. For the reasons set forth below, the Court will grant the Commissioner's motion for summary judgment.

I.      **FACTS AND PROCEDURAL HISTORY**

Elliott filed an application for a period of disability and Disability Insurance Benefits ("DIB") on June 22, 2006, alleging a period of disability beginning August 15, 2005. AR 17, 40, 63-67. On September 26, 2006, Elliott filed an application for Supplemental Security Income ("SSI"). AR 1284-1296. The claims were denied initially and on reconsideration. AR 52-55, 1275-78, 47-49, 1270-73. A hearing was held before an Administrative Law Judge ("ALJ") on December 19, 2007. AR 1418-60. On May 1, 2008, the ALJ issued an unfavorable decision finding Elliott was not disabled. AR 14-30.

Elliott then made a request for review to the Appeals which was denied on January 6, 2009. AR 3-5. As a result, the ALJ's decision became the final decision of the Commissioner. Because Elliott has exhausted all available administrative remedies, this case is now ripe for judicial review under §§ 205(g), 1631(c) of the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3).

## II. DISCUSSION

### A. Standard of Review

When reviewing decisions of the Social Security Agency, the Court is commanded to uphold the Agency decision, "absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (internal quotation marks and citation omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 285-86 (6th Cir. 1994).

This Court is required to defer to the Agency's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). The Court cannot review the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Nelson v. Comm'r of Soc. Sec.*, 195 Fed. App'x 462, 468 (6th Cir. 2006); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Where the Commissioner adopts the ALJ's opinion as its own opinion, the Court reviews the ALJ's opinion directly. *See Sharp v. Barnhart*, 152 Fed. App'x 503, 506 (6th Cir. 2005).

**B. Overview of the Process**

Under the Social Security Act, disability is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). The disability determination is made by an ALJ using a five step sequential evaluation process. *See* 20 C.F.R. § 416.920. The claimant has the burden of proving the existence and severity of limitations caused by her impairment and that she is precluded from doing past relevant work for the first four steps of the process. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). However, the burden shifts to the Commissioner for the fifth step. *Id.*

At the first step, the claimant must show she is not currently engaging in substantial gainful activity. *See* 20 C.F.R. § 416.920(a)(4)(I); 20 C.F.R. § 404.1520(b). At the second step, the claimant must show that she suffers from a severe impairment or a combination of impairments that are severe. *See* 20 C.F.R. § 404.1520(c). At the third step, a claimant must establish that her impairment or combination of impairments meets or medically equals a listed impairment. *See* 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404.1525; 20 C.F.R. § 404.1526.

Before considering the fourth step, the ALJ must determine the claimant's residual functional capacity ("RFC"). *See* 20 C.F.R. § 404.1520(e). The RFC analyzes an individual's ability to do physical and mental work activities on a sustained basis despite any existing mental or physical impairments. In determining the RFC, the ALJ must consider all of the claimants impairments, including those which are not severe. *See* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545. Once the ALJ has determined the claimants RFC, he must determine whether the claimant has the RFC to perform the requirements of her past relevant work. *See* 20 C.F.R. § 404.1520(f).

At the fifth step, the burden shifts to the Commissioner to establish that there is sufficient

work in the national economy that the claimant can perform given her RFC, age, education and work experience. *See* 20 C.F.R. § 404.1520(g); 20 C.F.R. § 404.1512(g); 20 C.F.R. § 404.1560(c).

**C. The ALJ's Decision**

At step one of the sequential evaluation process, the ALJ determined that Elliott has not engaged in substantial gainful activity since August 15, 2005, the alleged disability onset date. AR 19. At step two, the ALJ determined that Elliott has the following severe impairments: congestive heart failure; chronic obstructive pulmonary disease; history of meniscal tear left knee; cyst left wrist; multiple sprains/strains; degenerative disc disease; depression; anxiety; and borderline intellectual functioning. *Id.*

At step three, the ALJ determined that Elliott does not have an impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 24. With regard to her mental impairments, the ALJ found that they did not meet the criteria of listing 12.04 or 12.06. In making this determination, the ALJ considered whether the "paragraph B" criteria had been satisfied. After finding that Elliott had no greater than moderate difficulties in activities of daily functioning, social functioning and concentration, persistence or pace, and no episodes of decompensation, the ALJ found that the "paragraph B" criteria were not satisfied. AR 24-25. The ALJ also found that the "paragraph C" criteria were not established. AR 26.

Prior to step four, the ALJ determined Elliott's RFC. After considering the evidence in the record, he determined that:

> the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c)[1] except for work requiring near and far visual acuity; exposure to extreme

---

[1] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do

> hot or cold; and exposure to fumes, odors, dusts, gases, or poor ventilation. The claimant is moderately limited in her ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; interact appropriately with the general public; and to respond appropriately to changes in the work setting.

AR 26. Furthermore, the ALJ found that Elliott's statements concerning the intensity, persistence and limiting effects of her symptoms were not credible. *Id.* The ALJ also noted that no treating source offered an opinion of disability or submitted RFC statements. AR 28.

At step four, the ALJ determined that Elliott is unable to perform her past relevant work as a waitress or cashier. *Id.* At step five, the ALJ then determined that based on Elliott's age,[2] education,[3] work experience, and RFC there are jobs that exist in significant numbers in the national economy that she can perform. *Id.* In support of this finding, the ALJ relied on testimony by a vocational expert ("VE") that an individual with Elliott's characteristics and limitations could perform such representative occupations as food preparation worker, hand packer, production worker and grocery store bagger. AR 29. Consequently, the ALJ determined that Elliott is not disabled, as defined in the Social Security Act, from August 15, 2005 through the date of his decision. *Id.*

**D. Analysis**

In support of her motion for summary judgment, Elliott makes three arguments. First, she asserts that the ALJ erred by failing to specifically discuss her SSI application in his hearing decision. Second, she asserts that the ALJ's RFC determination is not supported by substantial evidence. Finally, Elliott asserts that the vocational expert's ("the VE's") responses to hypothetical

---

sedentary and light work." 20 C.F.R. § 404.1567(c).

[2] Elliott was thirty-five at the alleged disability onset date which is defined as a younger individual.

[3] The ALJ determined that Elliott had a limited education but noted that she was able to communicate in English.

questions posed by the ALJ do not provide substantial evidence supporting a finding that there are jobs that exist in significant numbers that she can perform.

**1. The ALJ's failure to address Elliott's SSI application in the hearing decision.**

Elliott first argues that the ALJ erred by failing to reference her application for SSI in his written decision. Elliott claims that this error affects the administrative finality of her SSI claim. While Elliott is correct that the hearing decision did not specifically refer to her application for SSI, a review of the hearing transcript indicates that the ALJ was well aware of the SSI application. In fact, at the hearing, the ALJ stated that:

> the general issues today are whether you're entitled to Title II Disability Insurance Benefits, whether you're eligible for Title XVI SSI disability payments based on applications that you filed in June and in September of '06. *The specific issue today is whether you've been disabled with the meaning of the Social Security Act*.

AR 1421 (emphasis added). In considering both applications, the same specific issue - whether Elliott is disabled under the Social Security Act - needed to be determined. Furthermore, the same legal standards and sequential evaluation process is employed for making the disability determination regardless of whether an application is for DIB or SSI.

The Court agrees with Elliott that it would have been preferable for the ALJ to have clearly referenced the SSI application in his hearing decision. However, the failure to do so is harmless error and does not require reversal or a remand. The hearing decision clearly considered all relevant evidence from the application period in making the disability determination. Furthermore, Elliott has failed to explain how the failure to reference the SSI application impacted the ALJ's disability determination. Elliott has also failed to cite any case law requiring reversal or a remand to the Social Security Administration in these circumstances. The Court fails to see how a remand to the ALJ to insert language into his decision specifically referencing the SSI application would serve any useful

6

purpose. *See NLRB v. Wyman-Gordon*, 394 U.S. 759, 766 n.6, 22 L. Ed. 2d 709, 89 S. Ct. 1426 (1969)(plurality opinion)(explaining that where "remand would be an idle and useless formality," the courts are not required to convert judicial review of agency action into a ping-pong game"). Instead, remand for the reason asserted would merely delay judicial review of Elliott's disability claim. As a result, the Court will proceed to consideration of Elliott's arguments that the ALJ's disability determination is not supported by substantial evidence.

**2. The RFC determination.**

Elliott asserts that the ALJ's mental RFC is not supported by substantial evidence because he adopted state agency psychologist opinions over those of her examining physicians. With regard to the ALJ's physical RFC determinations, Elliott asserts that her left knee and right upper extremity impairments were not given proper consideration.

**a. The ALJ's mental RFC findings.**

In his decision, the ALJ assessed Elliott as having moderate limitations "in her ability to understand, remember, carry out detailed instructions; maintain attention and concentration for extended periods; interact appropriately with the general public; and to respond appropriately to changes in the work setting." AR 26. Elliott contends that these findings are not supported by substantial evidence because her examining physicians noted more severe mental limitations.

The first of these examinations was performed by Dr. Vora on May 19, 1998. AR 550-554. Dr. Vora indicated that Elliott had a fair ability to understand, retain and follow instructions; fair ability to sustain attention to perform simple repetitive tasks; fair ability to relate to others; and poor ability to tolerate stress and pressures associated with work activities. AR 554. Initially, it is worth noting that Dr. Vora's examination occurred at least seven years before the alleged disability onset date. This draws into question how relevant her findings are to the present inquiry. Secondly, Dr.

Vora is not a treating physician because she only examined Elliott one time. Thus her opinion is not entitled to the weight of a treating physician. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Finally, her assessment only appears to differ from that of the ALJ in one regard - Elliott's ability to tolerate the stress and pressures of work activities. While the ALJ determined that Elliott has moderate limitations in this area, Dr. Vora found her abilities in this area to be poor. Dr. Vora did not express any opinion on the impact that Elliott's mental impairments have on her ability to perform work.

Elliott also asserts that the ALJ improperly considered the opinion of Dr. Spjut. Dr. Spjut consultatively examined Elliot in January 2007. AR 249-59. He assessed her with a GAF score of 60 suggesting moderate limitations. AR 253. Furthermore, he opined that Elliott:

> would not have difficulty understanding simple instructions, but occasionally might have some difficulty understanding detailed instructions. Once she knew locations and procedures, she would be able to remember them. Occasionally, some overlearning might be required before she would feel confident making simple work-related decisions. Her health problems and panic attacks likely would interfere with maintenance of schedules, attendance for sustaining a regular routine in a competitive labor situation. She described experiencing panic attacks when she is working in coordination with and/or proximity to others.

*Id.* The ALJ's decision indicates that he gave great consideration to Dr. Spjut's assessment and utilized many of his observations and findings in determining the severity of Elliott's mental impairments and her mental RFC. AR 24-26. However, ultimately the ALJ explained that while "Dr. Spjut's assessment regarding functional limitations in various mental domains has been considered and afforded appropriate weight" it has not been adopted "in light of the fact that his GAF rating signifies greater functional ability and his findings are based on a presentation absent any formal mental health intervention or treatment with appropriate psychotropic medications." AR 28.

Elliott also asserts that the ALJ erred by essentially adopting the opinions of state agency examining psychologists. In general, the opinions of examining sources are entitled to greater

weight than the opinions of medical sources who have not examined a claimant. 20 C.F.R. 404.1527(d)(1). According to Social Security Ruling ("SSR") 96-6p these opinions "can be given weight only insofar as they are supported by the evidence in the case record...." 1996 SSR LEXIS 3, at *5-6, 1996 WL 374180. In this case, the ALJ found that the opinions of the state agency examining psychologists were supported by the record. The Court agrees. As a result, the ALJ did not err in giving them appropriate weight and his mental RFC determination is supported by substantial evidence in the record.

**b. The ALJ's physical RFC findings.**

Elliott asserts that the ALJ's RFC determination is not supported by substantial evidence because he incorrectly analyzed her physical impairments. Specifically, she alleges that he failed to properly consider the effects of her left knee and right upper extremity impairments.

With regard to the left knee impairment, Elliott points to an examination by Dr. Dubin on September 30, 2004. AR 202-204. During the course of this examination, Dr. Dubin gave an impression of a tear of the medial meniscus and internal derangement of the left knee. AR 202. Consequently, he recommended an MRI and gave Elliott some Tylenol. *Id.* When Elliott returned on October 28, 2004, Dr. Dubin noted that she was continuing to work and doing better with less pain. AR 203. He also indicated that while the MRI showed a partial tear of the MCL, this was not a surgical problem without any evidence of instability. Dr. Dubin expressed his opinion that despite this knee injury, Elliott could continue to work. *Id.*

Initially, the Court notes that the ALJ considered Elliott's history of meniscal tear in the left knee to be a severe impairment. AR 19. Furthermore, he discussed the examination by Dr. Dubin in great detail. AR 22. The record indicates that Elliott did not require any additional follow up treatment for her left knee with Dr. Durbin or any other orthopedic physician. Elliott has failed to

9

direct the Court's attention to any additional medical records indicating that she continued to receive treatment for her left knee or was significantly limited by this impairment. Elliott's testimony at her hearing that she is unable to put any pressure on her knee and has tremendous difficulty walking due to leg weakness simply is not supported by the medical evidence in the record. AR 1442-43. This evidence includes the consultative examination performed by Dr. Bradley Davis on September 22, 2007 finding that Elliott has a normal gait and station and does not require an assistive device to ambulate. The alleged inability to walk is also inconsistent with Elliott's testimony that she likes to go fishing, which she does twice per month. AR 19, 1428. Elliott also testified that she does essentially all of the household chores, prepares meals and takes care of her disabled spouse. She also apparently cares for the needs of her son. As a result, the Court finds that the ALJ properly considered Elliott's left knee impairment.

Elliot also claims that the ALJ's RFC assessment fails to consider her upper extremity impairment. In fact, Elliott asserts that the ALJ failed to mention this impairment in his decision. However, even a cursory review of the ALJ's hearing decision indicates that he considered this impairment, including evidence of problems with Elliott's left shoulder, arms, elbows and wrists. Consequently, the ALJ clearly did not ignore Elliott's upper extremity impairment.

Elliott next contends that the ALJ erred by failing to mention the opinion of Dr. Ratliff in his opinion. Dr. Ratliff examined Elliott on August 24, 2006 and noted that Elliott's:

> grip strength is decreased in the right upper extremity, compared to the left and she is a right handed female. There is decreased range of motion of the right wrist. Flexion is decreased to 35 degrees, extension is decreased to 30 degrees. Pronation and supination are normal. She complained of pain with flexion and extension of the right wrist.

AR 548. Despite this assessment Dr. Ratliff only found that Elliott had a "mild restriction in lifting and carrying with the right upper extremity but none in the left upper extremity. There is no

10

restriction for stooping, bending, reaching, sitting, standing, moving about, handling objects, or ability to travel...." *Id.* Notably, Dr. Ratliff gave no opinion of disability and only imposed a mild restriction on Elliott's ability to lift and carry.

Elliot also asserts that the ALJ was required to specifically discuss these limitations and provide some reasons for his rejection of them. However, the ALJ is only required to give good reasons for rejecting the opinions of treating sources. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007). Elliott has not alleged that Dr. Ratliff is a treating source and the record would not support such a finding. Consequently, the ALJ was not required to articulate "good reasons" for the weight given to Dr. Ratliff's opinion.

The Court agrees that it would have been preferable for the ALJ to specifically address Dr. Ratliff's opinion. However, his failure to do so does not require reversal or a remand to the agency. The record in this case is voluminous and the ALJ's hearing decision indicates that he took great pains in considering all of the evidence. Even if the ALJ were ordered to specifically discuss Dr. Ratliff's opinion, would not appear to lead to a different result. As discussed above, the limitations imposed by Dr. Ratliff were mild and he never opined that Elliott would be precluded from working or significantly limited in her ability to do so. Given the record as a whole, the Court finds that the ALJ adequately addressed Elliott's upper extremity limitations. In addition, the RFC determination is supported by substantial evidence in the record.

**3. Hypothetical questions to the VE.**

Elliott's final argument focuses on the ALJ's finding that there are jobs that exist in significant numbers in the national economy that she can perform. Elliott asserts that this finding is not supported by substantial evidence because the hypothetical questions posed by the ALJ to the VE do not accurately convey her limitations.

First, Elliott contends that the ALJ's finding is flawed because his RFC determination did not property include limitations from her left knee and right upper extremity impairments. However, as discussed above, the ALJ's RFC determination is supported by substantial evidence in the record. As a result, this contention is without merit.

Elliott next argues that the ALJ's hypothetical questions to the VE did not properly describe the limitations that he found in her RFC. "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays [plaintiff's] individual physical and mental impairments." *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987)(internal citations and quotations omitted). Elliott asserts that the ALJ's hypothetical question did not accurately portray her impairments because it did not take into account the her near and far visual acuity impairments. The Commissioner responds that this impairment is accounted for in the ALJ's hypothetical question because he specified that Elliott required an "object focused work environment." AR 1456. However, the Court is unable to determine what impairments the "object focused" limitation refers to.

The Commissioner contends that any error in the ALJ's hypothetical questions is harmless and that remand would not alter the ALJ's findings and waste judicial and administrative resources. The Court is inclined to agree. The record clearly indicates that Elliott had problems with her visual acuity. However, she was examined by Dr. Mackey on December 29, 2006 and he determined that "with her current visual acuity she will have no trouble performing job related activities." Elliott has not presented any medical evidence showing that her vision problems render her unable to work. As a result, the Court agrees that remanding this matter to clarify the ALJ's hypothetical question with

regard to visual acuity would not serve a useful purpose.[4]

Finally, Elliott argues that the ALJ's hypothetical questions do not accurately describe her limitations because the ALJ's RFC described her as being limited in her "exposure to extreme hot or cold; and exposure to fumes, odors, dusts, gases, or poor ventilation," while the hypothetical question asked the VE to "assume that she can do no job that will expose her to concentrated levels of temperature extremes or pulmonary irritants...." AR 26, 1456. The Court notes that the ALJ explained in his question that pulmonary irritants referred to "dust, fumes, odors, gases and the like." *Id.* Taking this explanation into account, the hypothetical question accurately conveys Elliott's impairments and limitations with regard to temperature extremes and to substances in the air affecting her lungs. As a result, because the ALJ's hypothetical questions accurately convey Elliott's impairments, substantial evidence supports the finding that a significant number of jobs exist in the national economy that Elliott can perform.

## III. CONCLUSION

For the reasons set forth above, the Court finds that the ALJ's decision is supported by substantial evidence. Accordingly, the Court **HEREBY ORDERS** that:

(1) Plaintiff's Motion for Summary Judgment (Rec. No. 9) is **DENIED;**

(2) Defendant's Motion for Summary Judgment (Rec. No. 13) is **GRANTED;** and

(3) The administrative decision of the Commissioner will be **AFFIRMED** by a separate judgment entered this date.

---

[4] While the Court does not believe that this error necessitates reversal or remand, the Court would recommend that ALJs exercise greater precision in formulating their hypothetical questions. This is because a VE's response to hypothetical questions is regularly relied upon to meet the Commissioner's burden of establishing that there are jobs that a claimant can perform. These responses provide substantial evidence to support an ALJ's decision when the hypothetical questions accurately convey a claimant's mental and physical impairments. As a result, their accuracy often becomes a critical issue during judicial review. *See Potter v. Comm'r of Soc. Sec.*, 223 Fed. App'x 458, 464 n.4 (6th Cir. 2007)(unpublished).

Dated this 3rd day of February, 2010.



Signed By:
*Karen K. Caldwell*  KKC
United States District Judge